Are you about to receive 50 minutes per side between us to be shared by the accountant Take your time. We've obviously got lots of paper to bundle up. You need more associates. Is that like a rolling milk crate? I don't know what that is, but it carries my minors in it. I think you must have been a college debater at one time. It's not actually mine. It's what we used to have in college debate. I've never seen anything like that. I don't know why our firm is supposed to be a human translator. It may be efficient. All right, the clerk may call the case. Has done so. Good morning. Edward Macy on behalf of Plaintiff Nicole Foco. I'm going to cede five minutes of my argument time to EEOC and reserve two minutes for rebuttal. You may. We are here on Plaintiff Nicole Foco's appeal of the District Court's grant of summary judgment on her paid discrimination claims. Ms. Foco worked for nearly six years for the vibroacoustic division of Freudenberg, an auto supply company. In that job, Ms. Foco was working in a man's world. She was the only professional woman at the vibroacoustic facility where she worked, and it was admittedly an environment where managers were unfamiliar with working with women. In that environment, she was consistently paid well below her male peers, even those performing substantially worse than she was. In the relevant statute of limitations, she was never classified at the appropriate grade level for her job, and her replacement was paid $40,000 more per year when Ms. Foco left for a higher-paying job. In this context, vibroacoustics president Dr. Ilkanyi Poore found Ms. Foco was not worth the expense when he was presented with a salary increase recommended by Ms. Foco's two supervisors and human resources. However, when he needed coffee at a meeting, he found Ms. Foco to be his most valuable employee. I think the briefing in this case largely demonstrates the errors that the District Court made, and I think the EEOC's argument is going to focus more specifically on the errors of the District Court. Counselor, could you stop one moment there and distinguish between what would be a Title VII sex discrimination, because your stuff about talking about getting coffee sounds like sex discrimination, as opposed to the equal pay claim of whether she was doing the same kind of job and whether there were other factors. That is, in general, you think about sex discrimination as you're being treated worse than a really comparable male, as opposed to equal pay, is it really exactly the same kind of job? So can you distinguish that and what you're really claiming as opposed to the atmospherics? Well, I mean, we have both claims. I mean, this Court has been clear that if we prove the EPA case, if we prove that she was performing substantially equal work, that they have not met their affirmative defenses, we also survive on the Title VII claim for pay discrimination. Separately, the Supreme Court has recognized that there are cases where you won't have an exact comparator, and in those cases, a plaintiff can move forward on an equal pay case based on sort of traditional Title VII McDonnell-Douglas framework. And in my view, and what we've predominantly focused on is the EPA portion, because I think we satisfy those requirements, but the environment and the way that she was treated so differently than her male peers, I think also would independently give rise to a Title VII claim, even if she were not deemed to be doing substantially equal work to her male peers. And is there a reason that you focus not on what I would have thought going in would be comparators, that is, the kind of people who were hired at the same time, who had the same level of education and experience, who came out of Ferris State and whatever. But I understand that's not what you're doing. You're saying she went in to an area where there were other people who had the same title, but had more experience, might have been better people, might not. But that, again, sounds more like sex. You're saying, well, I'm really better than him, and I should have gotten some good treatment. Whereas normally, if you have an office full of associates, of law firm associates, they may get paid different amounts. Some of them may have been there three years. Some of them may have been there four years. Some of them may do better business. Some may not. Right. Well, I mean, I think that we chose the comparators because under the Equal Pay Act, it's the question of what job are you doing. And our position is that regardless of Ms. Voca's experience or her education or those of her comparators, that the jobs that she was doing was the same as her other people. And I think it's very clear when you look at the— But that only gets you by the prima facie case. Correct. So let's assume that you met the prima facie case. Looking at the information that we have on the record for these other folks that you're comparing her to, they all seem to have had substantially more experience than she. So why is that not a valid other factor? It is a valid other factor. But the key is that on an affirmative defense, unlike a Title VII burden shifting where they merely have to articulate a difference, defendant's burden is to prove the affirmative defense, that these purported differences actually justified the pay disparity. And under Timmer v. MDOC, they have to prove that sex played no part in the disparity. And the Seventh Circuit recently addressed a very similar situation. How do you prove that? Isn't that the classic proving a negative? That is, if there is no evidence in the record that sex played a part, do you just get— you might say the—it sounds to me like it's what I call a residual theory to say that, oh, yes, they might have more experience, but that's only worth $10,000. And yes, they might be a little better, but that's only worth $10,000, and there's too big a difference. So you have to prove piece by piece, not just prove that there's a factor other than sex. Right. I think that they have to prove—I mean, I think looking— the best answer to that, I think, is to look at the King v. Acosta case. Because in that case, what Judge Easterbrook held was specifically that the defendant had, quote, articulated education and experience as potentially explanatory variables without proving that they actually account for the differences. And in this case, if you look at the factual record, all of their evidence is after-the-fact deposition testimony. They went through after-the-fact and said, look, here is the differences between the various employees, and so these justify our difference. Okay, but so you're saying—are you saying that under the Equal Pay Act, you have to have a matrix or an algorithm or something that explains every bit of pay, that you can't say, this guy's been here for 25 years, we're not going to cut his pay in half as this youngster starts coming up on him? Right, no, and in fact, that would be prohibited under the EPA to cut his pay in half, to equivocate. You have to raise the woman up. You don't have to have a matrix, but— Even if he's not really worth it anymore. If he's not worth it, then you can cut his pay. But if you're just doing it to meet— And therefore, you're obliged by the Equal Pay Act to shoot the old horses and not let them canter out to pasture. No, they can canter out to pasture just fine. But the problem with this case is, what could a jury find to show that Ms. Voca was not actually paid appropriately? And I think the key fact is that she was never on the pay scale. So defendants have pay scales, and at least a jury could find that they do. And in those pay scales, they presumably set a range that accounts for the difference in education and experience. And Ms. Voca, and only Ms. Voca, was never put on the appropriate pay scale for the job that she says she was performing. When you say only she, did you look at what happened to these other youngsters who were hired at the same time? Well, I mean— Were they all put on pay scale? I'm talking about compared to her comparable. So this is a small facility, and she was working in the relevant statute of limitations first as an applications engineer, and there were two other men she was working with, both of who were on the pay scale. But I have the same question that Judge Boggs has that I don't think you're answering. The company says that they paid all entry-level people the same regardless of sex, and you don't ever respond to that. So I assume you accept that to be true. We are not contesting that. So if men and women who come out of college and start at this company all start at the same pay, then basically your claim is, yeah, but she was better than everybody. She wasn't doing entry-level work. She jumped up into a higher classification, and she should have been making the same as people with 10 or 20 years. That's essentially your argument. That's essentially our argument. But under the EPA, the key is— Is there any support for that sort of theory? I mean— What's your best case for that? Well, I think that the— The technical issue of whether somebody's met the prima facie case. Forget those cases. I mean, I think if you look at the King v. Acosta, it's a Seventh Circuit case. But if you look at it, they lay a whole chart out of the people's salaries. And there's a woman who was making less, who had no college degree, who was below the pay scale, and it shows ranges from $55,000 to $102,000 that the men are making. And basically Judge Easterbrook is like, there's no evidence in the record that supports their burden. And so it sort of goes to the jury to see what happens with her pay. And I think the key here is that it sets up— The EPA sets up sort of prima— If you make a prima facie case, then they have to justify the disparity. And the focus is on the equal work. There's no evidence that she was ever paid the same— That there was any applications engineer paid this amount. And I believe there's specific testimony, I think from Tom Ram, one of her supervisors, that he was not aware of any applications engineer ever making less than $50,000 a year, which Ms. Foco did. And so when you talk about the actual job duties performed, she was unique. Okay, counsel, the King v. Acosta case, I see it cited in your reply brief, but not in your initial brief. Is that because it came down between the two? It did not. The EEOC cited it in its amicus brief, and then we cited it later. Okay, thank you, counsel. Thank you. May it please the Court, my name is Susan Starr. I represent the Equal Employment Opportunity Commission as amicus. I'm not an expert on the record, but I think when you were talking about the initial pay, I believe that had to do with a position that's really not at issue here, is when she initially started it was about technical engineers, and they were all started at the same pay. But the point of the King case. But that does demonstrate that, at least out of the box, it doesn't look like this is a typical company in the EEOC world that you think is discriminating right out of the box on sex. I agree with you. I think to start off, it's important to remember this is summary judgment. And then when we're talking here about the affirmative defense, the defendant has to prove that no reasonable jury could possibly find that sex was a factor in setting this pay disparity. And the pay disparity is kind of two factors. One is the initial pay disparity. And the other, as the Court and King recognized, it's the maintenance of that pay disparity. So maybe there was some justification in having some pay disparity initially. They cite the educational differences and the experience differences. But as the Court and King indicated, those are predictors, kind of like when you take your LSATs to get into law school. Those are predictors on how you will do in law school. But once you're in law school, this is from the King decision, once you're in law school, then it's about how you perform. And when you're in your job, the economic theory is, it's about what that performance is worth in the marketplace. So over time, if you see two people that are performing the same, or in this case, the woman performing much better than the men, if sex is not a factor, the salaries would tend to converge. I take it in a certain sense they did converge in the sense that she was getting larger pay raises, it's just she still remained quite far below. Is that fair? Yeah, there is evidence that her pay did go up a bit. And am I right that the business with the car allowance and the phone allowance, that got fixed prior to the limitations period? Right. So then you have the question, under these circumstances, does the Equal Pay Act require what I said, an algorithm, a formula that absolutely defines why this person is paid different from that person? I don't think so. Especially when it's on an individual basis. I mean, I analogize maybe because I am a lawyer. You go into a law firm and some young associates perform very good work and some old partners are old farts and are being overpaid, but you don't normally have to justify that on a line-by-line basis. That's my problem really. Right. It doesn't necessarily be a line-by-line basis. The point is that you have to show what did they really do. What were the factors they really took under consideration? You can look at maybe contemporaneous notes that were taken at the time. I mean, in essence, your case would clearly be a lot stronger if some other young male hotshot came into this and suddenly gets paid $100,000. Because what you've got are these people who have been there for a long time, and that's where the disparity is, really, isn't it? I guess that is where the disparity is. This is the defendant's burden of proof. This is a strict liability statute. This isn't like the normal federal discrimination statutes. This statute is different. Once we get to this discussion, we've already established that the Equal Pay Act has been violated, that a woman was paid less for doing the same work. So the defendant is liable. Now, the defendant can get out from under that by proving, on summary judgment, that no reasonable jury could possibly... Sorry, when you just said we already know it was violated, making a prima facie case isn't the same as meaning it's violated, is it? In the Equal Pay Act, there's only a two-step process, and we're on summary judgment.  No, I understand the difference. I'm just saying, isn't it overstating to say that the Equal Pay Act is violated when a prima facie case has been made? No, Your Honor, it is not. It's under the minimum wage provision of the Fair Labor Standards Act. This is a very different statute. Part of the problem is using that term, prima facie case, because I think it engenders confusion. But it's kind of like if you paid two... But isn't using the term violated if there is a legitimate factor other than sex, then there's no violation? It's an affirmative defense. All right. An affirmative defense is a little bit different. So they have to prove, you're right, at the end of the... We're not at the end of the day yet. But at this juncture, an Equal Pay Act violation has been established, and now an employer, if they can prove beyond doubt, prove so that a reasonable jury could not possibly find that sex was not a factor, and that very heavy burden, as this Court has characterized it... Reasonable jury could not find that sex was a factor. Right. Correct, Your Honor. Let me ask you a couple questions. It's always interesting for us to figure out why the EEOC is here in a particular case. And as I understand it in this case, you want to make sure that experience is not being used in connection with the establishment of the prima facie case. It's just the job duties and the skills required. Exactly. And then secondly, you're concerned about language that you don't like that talks about... that arguably talks about who has the burden of proof in connection with the special factors, right? And then you say you're not taking a position on anything else. The legal error, that was right. That was made, and whether or not that was kind... the defendant, in fact, relied on the factors at site. All right. Now, having assumed all that, when we get down to the question of, ignore the prima facie case, you've got a man and a woman doing the same job. One has a lot more experience than the other. You seem to say then that at that point there has to be a detailed analysis of why that additional experience justifies paying more money to do the same job. It's not a detailed analysis. The defendant has to prove why did it do that. Right. Exactly. Now, the only thing that you cite for that proposition, that in other words you can't pay somebody more merely based upon their experience, is this King decision from the Seventh Circuit, from which you really don't quote, and then you immediately go to your compliance manual. So are there any other cases that say that two people doing the same job, one has one year experience, one has 10 years experience, but they seem to both be equally adept at doing the job, that you can't pay the one more simply because that person has more experience. In other words, you have to justify something more than just the existence of more experience. Do you have any case that says that? No, and that's not exactly our position. Our position is the defendant just has to prove that. And in this case, if the defendant proves that it's education and experience, then the defendant has met its affirmative defense. Proves that one had more experience or proves that the additional experience allowed them to add more value to the job? That in that time that they set that pay, that they actually, in fact, relied on that, that they looked at that, that they turned to that, not after the fact looking back going, hey, there's some differences here. That's the reason. That they, in the moment, did not rely on sex. In the moment they said, no, we're going to pay more for experience, we're going to pay more for education, their educational background, and that's the reason. An employer can do that. So in other words, you don't, the employer just simply has to, first of all, I don't know how you prove that you actually did it based on experience, but ignore that for just a second. If the employer can prove that the pay differential is based on experience, even if they can't corroborate or establish that that experience provided additional value to the company, that's okay? Yes. And so here your view is it's their failure to prove up on what they said, which was, well, we did it based on experience. Yes, except for the maintenance of the pay differential. So back to Judge Box's algorithms and the like, how does one prove that you justified the pay differential based upon experience when, as in the facts in this case, there isn't any dispute that these folks had a lot more experience than she had. So how do you prove it beyond having somebody come in and testify, we're paying them more because they had more experience? Maybe contemporaneous notes, maybe on mail, maybe showing other people, look, this is how we treat all incoming people. So why is a person coming along saying we paid them more because they had more experience? Why is that testimony, why is that, there is that testimony in the record here, is there not? I think I'm not an expert on the record, but I believe I remember reading that in a brief. So why isn't that adequate proof in the EEOC's mind? We let people prove things in cases every day around this country by somebody coming in and testifying. Matter of fact, the rules say that's the best evidence oftentimes. I guess if it showed a real link between what was happening at the time of the decision as opposed to a post hoc justification, that would be enough. And I'd have to look at the precise language of what is exactly said in the record as to whether or not that meets that criteria. I think the last question, where would one go, if you're an employer, work in an HR department, where would one go, aside from an EEOC manual, where would one go to find what you have to be doing apparently day in, day out, to meet this contemporaneous requirement that you're saying exists? Where do you go to find what it is that you have to do if you're an HR person? At the time of the initial salary decisions? I didn't gather... It's kind of a two-prong. I didn't gather your position to be limited to initial salary. You say you have to be justifying that all the way along, which could be yearly, monthly, weekly, hourly. I don't know. Where do you go to find out what the standards are? I think the... Where do you go to find the standards are? The general standard is that you have to show that you're relying on something other than sex, whether that you show that through contemporaneous notes, you show it through comparators, but some reason to... so that somebody could look at that and go, oh, of course, that's the reason for this. So then you really are saying, I won't say an algorithm, but you have to have contemporaneous reasoning for every person's salary. When this woman moved from test technician to applications engineer, she was making some amount of money. They paid her somewhat more, but they didn't say, and because she only has one year experience in this job, we're not going to pay her as much as Mr. Yoder, and the difference is $30,000, and there's 20 years difference, and that's why we did it. They need contemporaneous notes of that sort, not just saying, she used to make so much, we're moving her up, we're going to pay her a little more. We don't have any other local comparator. There's not a male right next door that we have to negotiate for. Well, in this case, there is the fact of this pay scale, that she was outside of the pay scale in terms of underneath the pay scale for each of these job positions. Although there's some argument about, that's why I asked were all these other young people always, quote, on the pay scale, because they argued that they were not, and I didn't see a contravention of that. And similarly, if you say we need to pay Mr. X more because he was making $70,000 across the street, so when we get him, we've got to pay him $70,000 or he's not going to come, you've got to have that all documented line by line. And if you have that, then that's a factor other than sense. That's fine. Okay, thank you, Counsel. Any other questions? No. Thank you. You'll have your rebuttal, Mr. Macy. Good morning, Your Honors.  I'm going to take things a little bit out of order, if it's okay with you, to address two points that the panel was asking questions on. And the first was, what is the source for our argument that we relied on non-gender factors, our affirmative defense? And the source, quite simply, is the testimony of the managers who were involved in both the hiring decisions and the decisions about whether to increase and by how much to increase pay for all these individuals every year. Tom Ram was the Vice President of Sales. Gene Hawkins was the Vice President of Engineering. And Matty Yocani-Poor was the President of V&A, the entire division. All three, at one point or another, were involved at various hiring decisions for these individuals and the decisions about whether to increase or by how much to increase their salaries. There's no better source for that evidence. Could we have had contemporaneous notes? Sure. But we presented the testimony of individuals who had personal knowledge about the reasons behind why those decisions were made. Now, these are being characterized repeatedly as post-hoc rationalizations. Did they testify as to the basis of their decisions at the time they made the decisions? Absolutely. They testified that at the time they made these decisions, that's why they decided that a specific person would get a specific salary. By way of example, Dean Biondi was a person that Tom Ram hired as an account manager. Biondi had excellent ties with Chrysler. V&A wanted to market to Chrysler. That's one of the large reasons why he got a very high salary, because of his value to the organization. The next point I want to address is this notion that you would expect salary disparities to converge within a short period of time, and for that, plaintiffs rely upon the King v. Acosta case. That notion is present in other cases, but based on my reading, it's present in cases only where the disparity in experience is very small. We're talking five years or less. That is not our case. Our case, the disparity was very large. You're talking about someone with no experience versus 10, 15, 20, 25 years of experience. To put that in terms of lawyers, if I have 15 years of experience, I'm a partner in a law firm, or I'm not working there anymore if I'm not a partner. But that's the difference. The central claim is someone who is a brand-new associate arguing that the EPA entitles that person to the same pay or similar pay as someone who is a partner in a law firm. That's not what the EPA requires. Another interesting point. There was quite a disparity in experience for all except Biazzi, and Biazzi had two years' experience, as I understand it, but Biazzi is the guy that negotiated a higher pay. Absolutely. He negotiated, during the terms of his employment, a higher rate of pay. And interestingly enough, Biazzi is also a person who left the company claiming he was not being paid fairly. Back to my point on King versus Acosta, there is an interesting passage there that talks about disparities between men and women, and the court makes the observation that if there is an experience difference, and you're saying that justifies the level of pay, you would expect the salaries to converge if women, on average, are performing as good as men. Now keep in mind that King versus Acosta was a case where we're talking about three years' difference in experience, not 10, 15, or 20. But that passage is illustrative because that's exactly what we did here with Ms. Folkos' pay. If you looked at what HR did to her pay, if you look at how rapidly it was increased and the percentages by which it was increased, she received far more rapid and significant raises than all of her comparable male peers. We're talking 36% over the life of her employment versus males who received, on average, 2% to 3% per year. I'm not sure what I would do with this information anyway, but do you know whether she left this job to become an account engineer at another company or a different job? Judge, I don't recall whether she became an account manager at the job she went to. I do know she obtained the salary that she thought she should be making with us with that job. That's the $67,000? That's correct. Because that $67,000 is considerably less than Perkins, Prince, Biazzi, and Biondi. It is, and I think it's reflective of the difference in experience. So from your point of view, the difference is there clearly were factors other than sex. The question is just how much they should have weighed in the sense that she went and was happy, allegedly, if the record supports that, with less than her comparators had at your company, but she did get a good bit more than she had at your company. I would agree with that, except for I don't know whether she was happy with that job or not. She took it. That's right. But she hasn't sued them. Not that I'm aware of. Back to the prima facie elements. That was going to be the original starting point of my argument because I just want to make clear that Judge Stee absolutely followed the law. He took a look at the controlling case, the Corning Glassworks case versus Brennan. He articulated that standard. He looked at the Code of Federal Regulations and looked at what that required a plaintiff to provide for their prima facie case. And he looked at the definition of substantially equal work, and that is, it's important to focus on this, jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. The judge looked at that test, applied it, and concluded that plaintiff had not met her prima facie burden. Well, here, at least as far as the prima facie part of the argument, how do you distinguish between jobs requiring different amounts of skill and the skill level of the people performing the job? Clearly, the people had more experience. There's some dispute about how well each of them was doing the job, but wasn't the job being done the same job at the applications engineer level? The account manager is different. I'm focusing on the applications engineer. I would answer that plaintiff failed to place enough evidence into the record to demonstrate that those jobs were the same. I would also agree with you that the prima facie test under the EPA does not require the plaintiff to prove equality of skill, education, and experience between the individuals in the jobs, but I also don't believe Judge Stee did that, because if you look at the way his opinion flowed, he articulated the correct test, he made findings under that test, and only then did he discuss and describe experience and education among the individuals in those jobs. I know your reading is the only one that matters, but my reading of that is that Judge Stee cited that merely as... So how did he distinguish the jobs that were being done then in order to defeat the prima facie case? To defeat the prima facie case, doesn't he need to say that the job being performed was different? I think he can either say the job performed is being different or plaintiff failed to produce enough evidence to demonstrate that the jobs were the same, because it is plaintiff's burden at that stage. All right, and what did the plaintiff do here that wasn't enough? That is, she gave the titles, she gave some statement as to what was being done. What didn't she do? What didn't she do, Your Honor? She did not provide evidence as to the remaining definition of substantially equal work. I think she provided testimony from Jens Lange that, quote, same job, same responsibilities, that very conclusory statement. And that addresses responsibility, absolutely, but she did not address the element of equal skill. She did not address whether the two jobs required... But the equal skill, isn't it, is what the job requires, not how well you're doing it, right? If we're both plumbers, and I'm a really good plumber and you're a crappy plumber, but we're both good enough not to be fired, then the job requires the same thing, doesn't it? Yes, so long as you and I put enough evidence into the record to demonstrate that's what the job requires. We know the job titles aren't enough, because the Code of Federal Regulations says that. What plaintiff failed to do was to provide evidence showing that the jobs required equal skill, equal effort, and were performed under similar working conditions. That's where the failing was. All we have is limited evidence in a conclusory fashion on the level of responsibility that the job requires. So you would say that she needed to say, what, I interacted with other companies answering questions at a given level, and that was the same level that these other folks did? Yes. Or that I was in the office three days a week and on the field two days a week, and everybody else was the same? Yes. The focus is on actual duties at the prima facie stage of the job, and I think that could have been solved very easily with deposition questions or interrogatories, asking those with personal knowledge to explain what it is they were doing. And I think that's all it would have required, but we don't have that here. Along those same lines, and I don't want to get over into the question of whose burden it was. Let's just put that aside for just a second. We know that Prince managed what you described as the global Ford account, and Biondi had these strong contacts at Chrysler. I would have expected from somebody in this case, if it was true, that she is an account manager. You suggest that she's sort of on a test period, doesn't even really have the title, and we gave her some small little things to see how she did. I would have expected somebody would have put into the record that she was managing a book of business worth $100,000 and all these guys that were getting paid a lot more were managing a book of business versus a million dollars, or profitability figures, or net revenues, or something that illustrated that, particularly when you get to your special circumstances case, that she wasn't. The title was arguably the same, and what that person did was the same, but what they actually did in practice, given the accounts they were assigned to, was vastly different. But we don't find any of that here. You're correct, Judge. We do not have that level of specificity in the record. We do have testimony that the accounts that claim that. And your argument is that the failure there is hers, not yours. Yes, because that goes to the prima facie burden. Those differences, in part, are also relevant to the affirmative defense. The prima facie burden is always a low bar in all the fields that we address here. Why is that level of specificity required in connection with a prima facie case? That's what I think the EEOC is concerned about. I understand your point, and I think they do not have to go into a very great level of detail, but they do have to show that the actual duties are the same. But once she said, you want to rely upon your HR people saying, well, we paid these other people more because they had more experience, and that testimony is enough, why isn't her testimony enough at the prima facie level to say, I was doing the same thing that all the boys were doing? Why is there a heavier burden on her, particularly at the low bar prima facie case, to put in more specificity than you have to put in? I understand the tension between the two requirements and your point, Judge, but I think she does have to articulate exactly what they are doing. It doesn't need to be in an incredible level. Well, she did that. She just didn't articulate what the underlying value of those accounts were to the company. But is there some requirement that she has to do that? No, I don't think there's any requirement that she needs to demonstrate the value of the accounts, but the fact is the complexity and the skill required in the job is driven by the types of accounts that they were working on. And plaintiff never provided evidence to show that her accounts required the same level of skill and complexity that Prince's accounts did. And you didn't think that was important enough to put in when we got to your side of the case either? Judge, I understand your point, but we did put in some level of detail regarding the differences in account complexity and value when we discussed our affirmative defenses. I also want to make the point that even assuming, for the sake of argument, that Judge Stee did use the incorrect analysis of the prima facie case, and I don't think he did, for all the points I mentioned before, plaintiff still didn't meet that burden, not with regard to either the application engineer position or the account manager position. One other important thing to keep in mind in the case is plaintiff's counsel makes the point that Nicole Foco was the only person in V&A who earned under $50,000, and that point standing alone might seem to carry some weight. But when you understand the context, it doesn't seem so aberrant. And the context is Foco was the only person at V&A hired directly out of college with no prior experience. And it would be like a law firm with all 15, 20, 25-year partners with one associate hired directly out of law school. What about, maybe I missed a step in the record, I thought that they had hired some males out of Ferris State at about the same time. Is it that they were no longer with the company? They were not in her precise division. But you're correct, Your Honor. They hired several other males from Ferris State University with that same or similar plastics engineering technology degree. All were paid $42,000 as a starting salary. So what's the answer to your saying that she was the only one in V&A? Is that a division and they were in a different division? That's correct, Your Honor. I can see why that would be important back in the test engineer phase of her job. But then she alleges she became an applications engineer and then an account manager. Particularly by the time she gets to be an account manager. What difference does it make? What is the significance of the point that you're making? By then, she already has seven years of experience with the company. You're right, Your Honor. Excuse me, maybe it's five years. Five years, you're right, Your Honor. And the significance is, number one, we're not talking about three or four years difference in experience and similar education. We're talking about vast differences. And obviously it will take longer in time for her to catch up to people who came out with 15, 20, or 25 years experience when she had none. The other point that I would make to that is we had an HR group who was doing the right thing. They were looking at her salary at a consistent basis. Giving her large increases on a consistent basis to help her salary get higher. To help with that convergence. And that's the reason why it wasn't identical within just a couple of years. Okay, anything else, judges? Thank you. Thank you, Your Honor. Mr. Macy, you have your remaining time for rebuttal. Thank you. Did you have available to you, and I'll call it the book of business figures because I don't know what else to call it, what she was responsible for as an applications engineer and an account manager versus what the boys were doing? I don't know that we have – I don't think that was ever developed in the record. I don't know what those numbers are. I mean, we had testimony that they were doing the same job and doing the same thing. And my take would be – Are you an associate or a partner? I'm an associate. So you're an associate, and I assume you probably don't generate a lot of business yet. You work on things that are handed to you. For the most part, yes. But you're a lawyer, and you do research, and you appear in court, and you type things and all that kind of stuff. Do you deserve the same pay as a 20-year partner who has a whole bunch of clients and feeds you work? Certainly not, Your Honor, but I think that two – But you're both lawyers. Exactly. You both went to law school. You're both lawyers. Exactly, but two partners – The jobs you do are the same, aren't they? No, because they have a development factor to it. But two partners who have different books of business, a more successful partner and a less successful partner, are doing substantially equivalent work. Two associates, maybe one works on higher profile cases than the other one, are doing substantially equal work. And then on the flip side, the difference in the size of the case, the difference in the size of the business between two partners could – So I agree. My analogy is not a real good one. I'm conflating associates and partners. But all senior associates should be paid the same then, no matter whether one is working on the Detroit bankruptcy or whether one is doing collections work for a local bank. No, they state a prima facie case, and then those reasons are legitimate reasons that a defendant could prove actually motivate the difference. Okay, so that's the legal argumentative distinction we have here, is that, number one, do you make a prima facie case by just showing that you're doing the same sort of work even though one of you is doing it at a higher level? You concede that they have the opportunity to present these other factors. You just think they didn't do it to the summary judgment level. Right. Is that fair? And I want to be clear on this. It's like defendant has come forward with sufficient evidence that a jury could find that they approved their affirmative defense. I'm not saying they need contemporaneous records to win at all. But at summary judgment, I think it's important. One last fact I really want to emphasize, I see I'm out of time, is that in 2007, HR did an analysis using the factors that you would think that the company actually relied on and said she should have get an $8,000 raise and be making $55,000. HR said that, her supervisor and her second-level supervisor signed off on that. She worked for almost two more years before she ever actually got the raise, by which point she was performing account manager duties. And so what I'm saying in this case is... So did she get any raise at that time? Not at that exact time. In the interim, she got a raise the next year, but not up to $55,000. She didn't make $55,000 until the beginning of the year. We know what everyone is. We're just arguing about the price. Exactly. And the point is, so if their statements... Ms. Starr couldn't come up with any authority that says there has to be something beyond an HR person's testimony, that you have to have some sort of contemporaneous notes in a personnel file. Are you aware of any authority that corroborates yours and the EEOC's argument? It's not my position that they have to have that. What I'm saying in this case... So is testimony of a person from HR as to why they did what they did, is that enough? If the record only said that was enough. And there are a lot of different facts. If Ms. Voca were on the pay scale, if Ms. Voca were on the pay scale, if there were another man who was similarly situated, paid similarly, if there was not contemporaneous HR investigation saying she should be paid more than she actually ended up being paid, if the 2009 investigation by HR actually considered her as an account manager rather than an application engineer... So is there a case that I can go to or a couple of cases that says what you just said? Well, I mean, I think it's just under the general framework of them having to prove their affirmative defense. I would note that Judge Beckwith actually, and we didn't cite this, and I admit I hadn't read it until I saw you were on the panel, Judge Beckwith, she has a case, I believe it's for Xavier University, it's a published Southern District of Ohio Equal Pay Act, and it talks about professors and sort of the same thing where she says at the end of the day, the $30,000 difference, a jury could find that the $30,000 difference is not sufficient just based on education and experience, and she denied summary judgment. And I think that is the very important thing I want to emphasize, and I'm sorry I'm out of time, is that they have presented sufficient evidence that a jury could find for them. But we have, too, that they have not met their burden. Ms. Foucault, the only woman, is the only one under this pay scale, the only one not classified as an account manager, and the one who HR says should be paying more than she is. And now they're saying our affidavit was. Let me ask you one thing, and we will have to conclude then, about this HR. If after that study there was something in the record that said, well, look, yeah, you're probably right, but we just haven't got $8,000 right now, and I'm not going to cut somebody else's salary, and I'm not going to close down a division to save the $8,000. Would that be enough for them to win, or is that valid at all? I don't know. I would think that an economic thing could be a factor other than sex. I would point out that when she left, her replacement made $40,000 more, so I don't think $8,000 was going to be a big issue. And I would also say that, and here's just my last real quick hypothetical, is nothing in the record would be different. Assume Ms. Foucault was actually the low-performing senior person, and assume she was getting paid way less than Joe Lack, who actually was high-performing and had no experience. Then they could come in with this exact same record and say, well, look, Mr. Lack, his performance was night and day, and we paid him more because his performance was night and day, and he was so much better, and Ms. Foucault was terrible, and we put her on a PIP, and we eventually outsourced her. It's just a complete flip, but they could say that's what they did it. But why is Ms. Foucault the only one not on the PACE scale, and how have they met their burden when they could choose completely what their affirmative defense was at this point? Thank you, counsel. The case will be submitted. Clerk may call the next case.